Peter Rukin, SBN 178336
peterrukin@rhdtlaw.com
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Todd S. Heyman (*pro hac vice application granted*)
theyman@shulaw.com
Ian J. McLoughlin (*pro hac vice application granted*)
imcloughlin@shulaw.com
SHAPIRO HABER & URMY LLP
53 State Street, 13th Floor
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACK WARD and WILLIAM E. SIDWELL, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>FLUOR ENTERPRISES, INC.,<br><br>        Defendant. | Case No. 8:11-cv-00467-DOC -VBK<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>**[DECLARATIONS OF TODD HEYMAN, PETER RUKIN, AND ALEXANDER LEFFERTS FILED CONCURRENTLY]**<br><br>Date:    January 30, 2012<br>Time:    8:30 a.m.<br>Judge:  Honorable David O. Carter<br>Courtroom: 9D |

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.  Factual Background and the Parties' Contentions ............................ 3

    B.  Procedural History ................................................................................ 5

III.  TERMS OF THE PROPOSED SETTLEMENT ........................................... 6

    A.  The Settlement Class ........................................................................... 6

    B.  Relief to the Settlement Class ............................................................. 7

    C.  Settlement Notice, Claim, and Exclusion Procedures ..................... 8

    D.  Release of Claims ................................................................................. 9

    E.  Class Representatives' Incentive Payments, Attorneys Fees and Costs, and Settlement Administrations ............................................................ 10

    F.  Payment ............................................................................................. 10

IV.  ARGUMENT ............................................................................................... 10

    A.  Preliminary Approval of the Settlement is Appropriate ............... 10

        1.  The Settlement Is the Product of Serious, Informed, Non-collusive Negotiation ........................................................................... 11

        2.  The Settlement Contains No Obvious Deficiencies and Falls Within the Range of Possible Approval ............................................. 12

            a.  The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Support Preliminary Approval ............................................ 13

            b.  The Settlement Consideration and Plan of Allocation Are Fair and Reasonable ........................................................ 15

        3.  The Attorneys' Fees and Costs that Plaintiffs Intend to Request Are Reasonable ............................................................................. 16

        4.  The Proposed Service Awards to Class Representatives and Opt-In Plaintiffs Are Reasonable ........................................................ 16

        5.  The Court Should Appoint Rust Consulting, Inc., to Administer Settlement Claims ......................................................................... 18

    B.  Class and Collective Action Certification are proper .................... 18

        1.  Standards Governing Approval of Settlement Classes .................... 19

2.    The Settlement Class Satisfies the Requirements of 23(a) ............... 20

3.    The Settlement Class Meets the Requirement of Rule 23(b)(3) ...... 22

C.  The Proposed Notice is Adequate, Such that the Court Should Order Distribution of the Notice to Class Members ................................ 23

D.  The Court Should Set a Final Approval Hearing................................ 25

V.      CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)..............................................................................................19

*Armstrong v. Bd. Of School Dirs.,*
  616 F.2d 305 (7th Cir. 1980)..............................................................................10

*Berenson v. Faneuil Hall Marketplace,*
  671 F. Supp. 819 (D. Mass. 1987)......................................................................12

*Block v. City of Los Angeles,*
  253 F.3d 410 (9th Cir. 2001)................................................................................4

*Bradburn Parent Teacher Store, Inc. v. 3M,*
  513 F. Supp. 2d 322 (E.D.Pa. 2007)...................................................................18

*Burns v. Elrod,*
  757 F.2d 151 (7th Cir. 1985)..............................................................................24

*Bynum v. Dist. Of Columbia,*
  412 F. Supp. 2d 73 (D. D.C. 2006).....................................................................18

*Byrd v. Civil Service Comm'n,*
  459 U.S. 1217 (1983)..........................................................................................11

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004)..............................................................................24

*Cicero v. DirecTV, Inc.,*
  No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010)..................12

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1988)............................................................................11

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977)............................................................................13

*Cullen v. Whitman Med. Corp.,*
  197 F.R.D. 136 (E.D. Pa. 2000).........................................................................16

*Dail v. George A. Arab, Inc.,*
  391 F. Supp. 2d 1142 (M.D. Fla. 2005)..............................................................11

*Dunleavy v. Nadler (In re: Mego Fin. Corp. Sec. Litig.),*
  213 F.3d 454 (9th Cir. 2000)..........................................................................11, 15

*EEOC v. Kovacevich "5" Farms,*
  No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr.19, 2007)..........20

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)............................................................................................24

*Felzen v. Andreas,*
  134 F.3d 873 (7th Cir. 1998) ........................................................................10, 11

*Garner v. State Farm Mut. Auto. Ins.,*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............. 18

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .........................................................11, 19, 21, 23

*Immune Response Securities Litigation,*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................. 12

*Kettenring v. Los Angeles Unified School Dist.,*
  167 Cal. App. 4th 507 (2008) ............................................................................ 4

*Klem v. Cnty. of Santa Clara,*
  208 F.3d 1085 (9th Cir. 2000) ........................................................................... 4

*La Parne v. Monex Deposit Co.,*
  No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010)... 11, 19

*Lerwell v. Inflight Motion Pictures, Inc.,*
  582 F.2d 507 (9th Cir. 1978) ........................................................................... 23

*Lynn's Food Stores, Inc. v. U.S.,*
  679 F.2d 1350 (11th Cir. 1982) ........................................................................ 20

*Mazza v. Am. Honda Motor Co., Inc.,*
  --- F.3d ----, No. 09-55376, 2012 WL 89176 (9th Cir. Jan 12, 2012) ........................... 20

*Misra v. Decision One Mortg. Co.,*
  No. SA CV 07-0994 DOC (RCx), 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009)..19, 24

*Officers for Justice v. Civil Service Com.,*
  688 F.2d 615 (9th Cir. 1982) .......................................................................11, 13

*Powers v. Eichen,*
  229 F.3d 1249 (9th Cir. 2000) ......................................................................... 16

*Rannis v. Recchia,*
  No. 09-55859, 2010 WL 2124096 (9th Cir. May 27, 2010) ........................................ 20

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ........................................................................... 16

*Scholtisek v. Eldre Corp.,*
  229 F.R.D. 381 (W.D.N.Y. 2005)......................................................................19, 23

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ......................................................................... 16

*Smith v. Tower Loan of Miss., Inc.,*
   216 F.R.D. 338 (D. Miss. 2003) ............................................................... 17

*Staton v. Boeing,*
   327 F.3d 938 (9th Cir. 2003) ................................................................... 17

*Tableware Antitrust Litigation,*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................. 12

*Van Vrancken v. Atl. Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 18

*Vasquez v. Coast Valley Roofing, Inc.,*
   670 F. Supp. 2d 1114 (E.D. Cal.2009) ................................................... 12

*Vitamins Antitrust Litig.,*
   No. MISC 99-197 (TFH), MDL 1285, 2001 WL 856292 (D. D.C. July 25, 2001)...... 13

*Wal-Mart Stores, Inc. v.*
   *Dukes,* 131 S. Ct. 2541 (2011) ............................................................... 20

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004) ....................................... 19

Opinion Letter from U.S. Dep't of Labor, No. FLSA2003-5 (July 9, 2003) ..................... 5

Theordore Eisenberg & Georffrey P. Miller, "Incentive Awards to Class Action
   Plaintiffs: An Empirical Study" (2005). *New York University Law and Economics Working
   Papers.* Paper 40.  http://lsr.nellco.org/nyu_lewp/40................................................. 17

**Rules**

29 U.S.C. §216(b) ............................................................................................ 19

29 U.S.C. §255(a) ............................................................................................ 14

29 U.S.C. §260 ............................................................................................... 14

FED. R. CIV. P. 23(e)(1) ..................................................................................... 23

**Regulations**

29 C.F.R. § 541.602(a) ...................................................................................... 4

## I.     INTRODUCTION

Plaintiffs Mack Ward and William Sidwell ("Plaintiffs") seek preliminary approval of this proposed settlement involving Project Controls Employees ("PCEs") employed by Fluor Enterprises, Inc. ("Fluor"), inside and outside California.  Fluor treats PCEs as exempt from the overtime requirements of federal and state law and pays them at a straight-time rate of pay rather than an overtime rate of pay for the overtime hours that they worked.  Plaintiffs challenged this pay practice on the grounds that Fluor did not pay PCEs on a true "salary basis" within the meaning of the federal Fair Labor Standards Act ("FLSA") and California law, but instead reduced PCEs' wages when they worked partial days.  Under both federal and California law, the employer must guarantee a weekly minimum salary and cannot deduct from that amount simply because an employee works a shorter than normal day in a workweek.

The Settlement was reached after the exchange of relevant payroll data, a mediation with retired U.S. Magistrate Judge Edward Infante, and several additional months of arm's-length negotiations.  Because the claims in the case turn on the question of whether Fluor paid PCEs on a salary basis, the pre-mediation discovery included production of Class Member payroll data, which Plaintiffs' counsel analyzed (with the assistance of a data expert) to determine the frequency of pay deductions below the minimum weekly salary.

The payroll data that Fluor produced included 46,180 pay periods worked by 851 PCEs.  Plaintiffs' analysis of this data revealed at least 125 instances where 72 different PCEs appear to have experienced a partial day deduction from pay which resulted in the PCE being paid for less than 8 hours of work for one or more days during a two-week payroll cycle.  The analysis also revealed at least an additional 369 instances where a PCE appears to have experienced a partial day deduction in pay which resulted in a recording of fewer than 8 hours of work for one or more days during a particular

1  workweek, although the average of hours worked per day for the entire pay period was

2  8 or more.

3        Plaintiffs contend that these deductions reflect that PCEs were not paid a

4  guaranteed salary consistent with the overtime exemption requirement.  Fluor, on the

5  other hand, has contended that:  the company has maintained and promulgated an

6  express policy requiring that PCEs be paid on a salary basis for at least 40 hours of

7  work each week; the identified deductions do not reflect a violation of the salary basis

8  requirement because the pay deductions were offset by additional payments in other pay

9  periods; and the workweeks with observed deductions do not constitute a pattern or

10  practice of unlawful deductions because they constitute only .38 percent of total pay

11  periods in the liability period.  The parties' dispute—and the issue that would be placed

12  before the Court and/or jury in the absence of settlement—is whether the identified

13  deductions reflect a pattern or practice of subjecting Class Members' to a reduction in

14  guaranteed weekly earnings in a fashion that violates the salary basis test, rendering the

15  Class Members nonexempt employees.

16        The proposed Settlement is fair and reasonable in light of the risks Plaintiffs and

17  Class Members faced in connection with the class certification and liability phases of

18  this case and the value of the claims should Plaintiffs prevail.  A determination that

19  PCEs were in fact paid on a salary basis would effectively dispose of the overtime

20  claims of the Plaintiffs and Class Members.  To avoid that risk, Plaintiffs' counsel have

21  negotiated a Settlement that creates a maximum settlement fund of $1,900,000, which

22  represents forty percent of the single damages owed to the Class.  Although Fluor

23  would pay less than the maximum settlement amount in the event that fewer than all

24  Class Members submit claim forms to participate in the Settlement, in no event will

25  Fluor pay less than the guaranteed settlement "floor" of $1,100,000.  Should all Class

26  Members submit claims, the average recovery per class member (after payment of all

27  litigation and settlement-related fees and expenses) will be approximately $1,510.

28

1    Plaintiffs' counsel believe that this Settlement—negotiated at arm's length with

2    the assistance of an experienced mediator—is a fair and reasonable resolution of the

3    claims against Fluor in light of the risks Plaintiffs faced if this matter proceeded to trial.

4    Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval

5    of the proposed settlement; (2) conditionally certify for settlement purposes an FLSA

6    Settlement Class; (3) conditionally certify a California Class for settlement purposes; (4)

7    approve the form, content, and method of distribution of the Notice and Proof of

8    Claim form; (5) appoint Rust Consulting, Inc., as the Claims Administrator pursuant to

9    the Settlement Agreement; (6) appoint Shapiro Haber & Urmy LLP and Rukin Hyland

10   Doria & Tindall LLP as settlement Class Counsel; and (7) schedule a hearing regarding

11   final approval of the proposed settlement and Class Counsel's request for attorney's

12   fees, costs, and incentive award payments.

13   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

14       **A.    Factual Background and the Parties' Contentions**

15       Fluor Corporation is a publicly owned engineering and project management

16   company.  Fluor uses specialized software programs to help schedule and monitor

17   projects for Fluor's clients around the country and employs PCEs to operate that

18   software on scheduling and monitoring equipment at client work sites.

19       Both Plaintiffs worked as PCEs for Fluor outside California, and Plaintiff Sidwell

20   also worked for Fluor in California between September 22, 2008 and May 7, 2009.  *See*

21   Docket Number ("Dkt. No.") 17, at ¶10 (Answer to First Amended Complaint).

22       It is undisputed that Fluor classifies PCEs as exempt from overtime and pays

23   PCEs at a straight time rather than overtime rate of pay for overtime hours reported.

24   Dkt. No. 17, at ¶¶5, 23.  PCEs fill out timesheets and are paid based on the codes that

25   they enter on their timesheets.  *See* Declaration of Peter Rukin ("Rukin Decl."), ¶ 7.

26   Fluor's written Human Resources policies provide that exempt employees are to be paid

27

28

1    a full week's salary in any week in which work was performed.  Rukin Decl., ¶ 7.  The

2    company has also generated timekeeping guidance for California and non-California

3    employees, explaining how exempt employees are to use various pay codes for paid

4    time off to ensure that they do not experience reductions in pay for partial day

5    absences.  Rukin Decl., ¶ 7.

6         Plaintiffs contend that Fluor misclassified its PCEs as exempt from overtime

7    because it did not pay them a guaranteed weekly wage that was not subject to deduction

8    based on the number of hours they worked each week (*infra* at 6), and that these less-

9    than-salary-equivalent payments reflect a pattern or practice of salary basis violations,

10   rendering PCEs nonexempt from federal and California overtime requirements.  *See* 29

11   C.F.R. § 541.602(a) ("an employee will be considered to be paid on a 'salary basis'

12   within the meaning of [federal overtime] regulations if the employee regularly receives

13   each pay period on a weekly, or less frequent basis, a predetermined amount

14   constituting all or part of the employees compensation, which amount is not subject to

15   reduction because of variations in the quality or quantity of work performed."); *Block v.*

16   *City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (disciplinary suspensions without

17   pay of 13 out of a total of 600 salaried employees over a six-year period established a

18   pattern of violations demonstrating an intention not to pay the employees on a salary

19   basis); *Klem v. Cnty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (53 improper

20   suspensions without pay among approximately 5300 purportedly exempt employees

21   over a six-year period establishes pattern or practice of violations).[1]

22        Fluor contends that Plaintiffs' claims are without merit.  Fluor has pointed to its

23   written policies and practices, which it claims conform to the requirements of the salary

24   basis test under California and federal law.  Fluor has further asserted that the observed

25   pay period reductions represent a tiny fraction of the pay periods in the liability period

26

27   [1] The salary basis analysis is the same under the FLSA and California law for purposes of the
     issues presented in this action.  *See, e.g., Kettenring v. Los Angeles Unified School Dist.*, 167 Cal. App.
     4th 507, 513 (2008) ("California follows the federal salary basis test to a substantial degree").

28

1    and cannot constitute a pattern or practice of violations, and that even the apparent

2    partial day deductions identified do not constitute violations because the company is

3    entitled to offset the pay reductions in the identified pay periods by the overtime hours

4    recorded and paid to class members in other, over-80 hour pay periods.  Finally, Fluor

5    relies on authority which post-dates the Ninth Circuit precedent cited above and

6    provides that (1) the salary basis test is satisfied so long as an employee is paid at least

7    $1/26^{th}$ of their salary every other week, and (2) "an employee's time-entry error or

8    omission or other clerical or mechanical error or omission that results in an initial

9    payment by the Company to an employee of less than $1/26^{th}$ of the employee's annual

10   salary in a biweekly pay period is not an unlawful 'docking' or deduction in the typical

11   sense . . ., does not call into question the Company's intention to pay on a salary basis,

12   and does not affect exempt status." Opinion Letter from U.S. Dep't of Labor, No.

13   FLSA2003-5 (July 9, 2003).

14        **B.    Procedural History**

15        On September 27, 2010, Plaintiffs filed this action in the United States District

16   Court for the Northern District of California.  Dkt. No. 1.  On December 10, 2010,

17   Plaintiffs filed an Amended Complaint alleging the following claims against Fluor: (1)

18   failure to pay required overtime compensation under the FLSA; (2) failure to pay

19   required overtime under California law; (3) failure to pay all wages due at termination

20   under California law; and (4) violations of California's Unfair Competition Law.  *Id.*

21   Dkt. No. 15.  Since the case was filed, four PCEs have joined the action as opt in

22   plaintiffs to assert their claims under the FLSA. Dkt. Nos. 26, 33.

23        On March 1, 2011, Judge Armstrong granted Fluor's § 1404 motion to transfer

24   this case to the Central District of California. Dkt. No. 29.

25        On March 7, 2011, the parties executed an agreement to toll the FLSA statute of

26   limitations retroactive to February 25, 2011 for all absent collective action members,

27   pending mediation of the case.  Rukin Decl., ¶ 8.

28

1    Beginning in March, 2011, Fluor produced and disclosed various categories of

2  documents and data relevant to claims in the case.  The documents Fluor disclosed to

3  Plaintiffs' counsel included copies of human resources policies concerning timekeeping

4  procedures and guidance regarding how exempt employees should record partial day

5  absences.  Fluor also produced payroll data, and Plaintiffs' counsel retained an expert to

6  assist Plaintiffs in analyzing the data.  This analysis revealed at least 125 instances where

7  72 different PCEs appear to have experienced a partial day deduction from pay which

8  resulted in the PCE being paid for less than 8 hours of work for one or more days

9  during a two week payroll cycle.  Declaration of Alexander Lefferts ("Lefferts Decl."),

10  ¶4.  The analysis also revealed at least an additional 369 instances where a PCE appears

11  to have experienced a partial day deduction in pay which resulted in a recording of

12  fewer than 8 hours of work for one or more days during a particular workweek,

13  although the average of hours worked per day for the entire pay period is 8 or more.  *Id.*

14    On August 18, 2011, the parties undertook a full-day mediation at JAMS in Santa

15  Monica with Judge Infante.  Although no settlement was reached that day, following the

16  mediation, with the assistance of the mediator, the parties continued to engage in

17  settlement discussion.  Subsequently, as a result of the additional settlement discussions,

18  the parties agreed to terms and conditions of settlement, which resulted in the

19  Settlement Agreement for which Plaintiffs seek preliminary approval in this motion.

20  Rukin Decl., ¶ 9.

21  **III.    TERMS OF THE PROPOSED SETTLEMENT**

22    The complete details of the Settlement are contained in the Settlement

23  Agreement signed by the parties and attached as Exhibit 1 to the Declaration of Peter

24  Rukin.  The following summarizes the Settlement Agreement's terms.

25    **A.    The Settlement Class**

26    The Settlement Class is composed of the "California Class" and the "FLSA

27  Class."  The California Class consists of all PCEs who worked in California from

28

September 27, 2006 to December 31, 2011.  Exh. 1, ¶¶ III.D and E..  The FLSA Class
consists of all PCEs who are not members of the California Class and who worked
anywhere other than California between February 25, 2008 and December 31, 2011.  *Id.*
The Settlement Class includes persons who worked in the following PCE positions:
Associate Project Controls Specialist I, II, or III; Project Controls Specialist I, II, III, or
IV; Senior Project Controls Specialist; Principal Project Controls Specialist; Manager,
Project Controls; and Director I, Project Controls.  *Id.*  ¶ III.P.

In order to receive a settlement payment under the Settlement, members of the
Settlement Class must submit a claim form and thereby become "Participating Class
Members."  Persons who are only members of the FLSA Class and who do not submit
a claim form do *not* release any claims that they may have for violations of any federal or
state wage and hour laws.  However, members of the Rule 23 California Class who
neither submit a claim form nor opt out of the Settlement will release their claims under
the terms of the Settlement.

**B.      Relief to the Settlement Class**

The Settlement provides that Fluor will pay up to $1,900,000 as the Maximum
Settlement Amount (MSA), and no less than $1,100,000 as a Settlement floor.  *Id*, ¶¶
III.L and Q, V.A and F(4).  The amount that Fluor pays above the Settlement floor will
depend on the number of Class Members who become Participating Class Members by
submitting claims to participate in the settlement.  In the event the value of the claims
submitted will not result in a Total Settlement Payout (TSP) of at least $1,100,000, then
the amount of each Participating Class Member's payment shall be increased *pro rata* up
to a maximum of 2.5 times the original payment.  *Id.*,  ¶ V.F(4).  In the unlikely event
that this increase in Class Members' payments does not achieve the Settlement Floor,
the difference between the TSP and the Settlement floor will be paid to the United Way
as a *cy pres* beneficiary, earmarked for an employee-related cause.  *Id.*, ¶ V.F(5).

Participating Class Members will be paid based on the number of workweeks

1  they worked during the relevant class period.  Each Participating Class Member will

2  receive his or her *pro rata* share of the Settlement pursuant to the following formula:

3  The total number of workweeks for the participating Class Member will be divided by

4  the total workweeks for all Class Members, and the resulting percentage will be

5  multiplied by the MSA ($1,900,000).  The resulting figure shall then be reduced on a *pro*

6  *rata* basis to account for Class Counsel's fees and litigation costs, settlement

7  administration costs, payroll taxes, and service awards (collectively "fees and expenses").

8      C.    **Settlement Notice, Claim, and Exclusion Procedures**

9          The parties have agreed, subject to Court approval, to a notice plan which

10  includes individual mailed notices that will provide the Settlement Class members with

11  sufficient information to make an informed decision about how and whether to

12  participate in the proposed settlement, object to the proposed settlement, or to exclude

13  themselves from the Settlement Class.  Exh. 1, ¶¶ VI.A-O.

14          Within 15 days after preliminary approval of the Settlement, counsel for Fluor

15  shall provide the proposed Claims Administrator (Rust Consulting or "Rust") a

16  spreadsheet containing Class Member employment data and contact information.  Rust

17  shall obtain updated address information for Class Members using a National Change

18  of Address search, a "skip trace" search, and other means that Rust customarily uses to

19  locate class members, and then mail to each Class Member the appropriate "Notice of

20  Class Action Settlement" and "Claim Form" (attached as Exhibits A and B to the

21  Settlement Agreement, respectively).[2]  If a Notice and Claim Form is returned with a

22  forwarding address, Rust will immediately re-mail the Notice and Claim Form using that

23  address information.  If a Notice and Claim Form is returned as undeliverable, Rust will

24  perform a search for a more current address and re-mail the documents.  Exh. 1, ¶

25  VI.C.

26

27  _____

[2] Because of the structure of the Settlement Agreement, both the California and FLSA Notices
are attached as Exhibit A, and both the California and FLSA Claim Forms are attached as
Exhibit B.

28

1   The Notice of Class Action Settlement informs Class Members of all material
2   terms of the Settlement, including the amount they should expect to receive under the
3   Settlement, the procedures for participating in or objecting to the Settlement, and (for
4   California Class Members) the procedure for requesting exclusion from the Settlement.
5   Exh. 1, at A and B.  The Notice also explains to Class Members how they can dispute
6   the number of workweeks contained on their Claim Forms and includes the same
7   release of claims that is contained in the Stipulation of Settlement.  The Notice also
8   expressly provides that Class Members may object to Class Counsel's request for
9   attorneys' fees and costs at any time prior to ten days after the filing of Class Counsel's
10  motion for an award of attorneys' fees and costs.  Exh. 1, at A.

11  Class Members will have 60 days from the mailing of the Class Notice to submit
12  a claim form, object to, or request exclusion from the Settlement.  Exh. 1, ¶¶ VI.G-I.
13  Rust will mail reminder postcards thirty days before the end of the claims period to all
14  Class members who have not submitted a Claims Form, filed objections, or expressly
15  requested exclusion from the Settlement.  Exh. 1, ¶ VI.F.  Ten days before the end of
16  the claims period, Rust will call the last known telephone number for all such remaining
17  Class Members, reminding them that they may receive money if they return their Claim
18  Forms before the claims deadline.  *Id.*

19  A Class Member's claim shall be deemed timely if it is postmarked or faxed to
20  Rust within sixty (60) days after the date Rust originally mailed the Notice and Claim
21  Form.  Rust shall honor untimely claims received before the Final Approval Hearing so
22  long as doing so does not interfere with the timely payment of claims to other
23  participating Class members.  Exh. 1, ¶ VI.G.

24  **D.    Release of Claims**

25  In exchange for payment of the Settlement Amount, the Representative
26  Plaintiffs, all FLSA Class Members who submit claims, and all California Class
27  Members who do not opt-out of the Settlement will release all claims against Fluor that

28

1  were alleged in this case or that reasonably arise out of the facts alleged in the case.

2  Exh. 1, ¶ VII.

3       E.     **Class Representatives' Incentive Payments, Attorneys Fees and
4              Costs, and Settlement Administrations**

5       The Settlement provides that deducted from the TSP will be sums for each of the

6  following:  (1) service payments to the named Class Representatives (not to exceed

7  $12,500 each) and service payments to the four Opt-In Plaintiffs who filed consents to

8  join this action on or before August 18, 2011 (not to exceed $1,250 each); (2) the fees of

9  the Settlement Administrator (estimated to be $25,000); (3) payroll taxes; and (3) Class

10  Counsel's attorneys' fees and costs, not to exceed a total of 25% of the Settlement.

11  Exh. 1, ¶ III.R.

12      F.     **Payment**

13      Within 15 days after the Court has entered Judgment and the time for appeal has

14  expired, Fluor will transmit to Rust the Total Settlement Payout.  Exh. 1, ¶ VI.L.

15  Within 15 days of receiving those funds, Rust shall distribute the funds pursuant to the

16  terms of Settlement.  Checks to Class Members will remain negotiable for 180 days, and

17  any funds remaining from uncashed checks shall escheat to the State of California.

18  Exh. 1, ¶ VI.M.

19  **IV.  ARGUMENT**

20      A.     **Preliminary Approval of the Settlement is Appropriate.**

21      The approval of a class action settlement is a two-step process under Fed. R. Civ.

22  P. 23(e).  *Armstrong v. Bd. Of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on*

23  *other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998).  First, the Court must

24  decide whether to grant preliminary approval of the settlement and order that notice of

25  the terms of the settlement be sent to class members, including by determining whether

26  the proposed settlement is "within the range of possible approval." *Id.*  The purpose of

27  the preliminary approval process is to determine whether the proposed settlement,

28

1   when taken as a whole, is fundamentally fair, adequate, and reasonable to the Class. *See*

2   *Dunleavy v. Nadler (In re: Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000);

3   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Dail v. George A.*

4   *Arab, Inc.*, 391 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005) (applying general class action

5   settlement standards in FLSA case); *La Parne v. Monex Deposit Co.*, No. SACV 08-0302

6   DOC (MLGx), 2010 WL 4916606, at *1 (C.D. Cal. Nov. 29, 2010) (applying Rule 23(e)

7   settlement standards in FLSA case).

8        The decision whether a proposed settlement is fair, adequate and reasonable to

9   the class is committed to the Court's sound discretion.  *See Hanlon*, 150 F.3d at 1026;

10  *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied, Byrd v.*

11  *Civil Service Comm'n*, 459 U.S. 1217 (1983); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

12  1276 (9th Cir. 1988).  In exercising that discretion at the preliminary approval stage, the

13  court should consider a variety of factors, including (1) whether the settlement was the

14  product of collusion between the parties; (2) the strength of Plaintiffs' case; (3) the risk,

15  expense, complexity, and duration of further litigation; (4) the risk of maintaining class

16  certification; (5) the amount of settlement; (6) investigation and discovery; and (7) the

17  experience and views of counsel.  *Hanlon*, 150 F.3d at 1026.  The Court also applies its

18  discretion in light of the judicial policy favoring settlement of complex class action

19  litigation.  *Officers for Justice*, 688 F.2d at 625 ("Voluntary Conciliation and settlement are

20  the preferred means of dispute resolution.  This is especially true in complex class

21  action litigation.").

22        As discussed below, application of the relevant factors here supports preliminary

23  approval of this Settlement.

24        **1.      The Settlement Is the Product of Serious, Informed, Non-**
          **collusive Negotiation**

25

26        As settlement inherently involves a potentially hard-fought compromise, a court

27  should generally presume fairness at the preliminary stage of approval of a class action

28

settlement so long as the settlement is recommended by experienced class counsel after arms-length bargaining. *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair"); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at * 3 (C.D. Cal. July 27, 2010) (same).

In this case, the Settlement Agreement is the result of intensive, arm's-length negotiations involving experienced employment counsel well-versed in both the substantive law and class action litigation procedures and familiar with the legal and factual issues of this case in particular. Rukin Decl., ¶¶ 3-10; Declaration of Todd Heyman ("Heyman Decl.") ¶¶ 3-7. Negotiations were conducted after relevant discovery and over the course of a full-day mediation session in August, 2011, with numerous follow-up conference calls between Plaintiffs' counsel, Judge Infante, and defense counsel over the following four and a half months. Rukin Decl., ¶ 9. "Such negotiations are highly indicative of fairness" of the proposed Settlement. *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

### 2. The Settlement Contains No Obvious Deficiencies and Falls Within the Range of Possible Approval

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, courts look to the strength of plaintiffs' claims, the risks plaintiffs' faced in pressing forward with their claims, and "plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.2009), quoting *In re Tableware Antitrust Litiga*tion, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The Settlement's adequacy must be judged as "'a yielding to absolutes and an abandoning of highest hopes . . . .' Naturally, the agreement reached normally embodies a compromise; in exchange for the saving and cost and elimination of risk, the parties each gave up something they might have

1  won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting

2  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

3       Here, an analysis of the Settlement shows that there are no grounds to doubt its

4  fairness, that it has "no obvious deficiencies" and it is "within the range of possible

5  approval." *In re Vitamins Antitrust Litig.*, No. MISC 99-197 (TFH), MDL 1285, 2001

6  WL 856292, at *4 (D. D.C. July 25, 2001).

7          a.    **The Strength of Plaintiffs' Case and the Risk, Expense,**
              **Complexity, and Likely Duration of Further Litigation**

8                **Support Preliminary Approval**

9       Plaintiffs contend that the observed apparent reductions in pay for partial day

10  absences constitute a pattern or practice of paying PCEs on an hourly rather than salary

11  basis, such that they do not receive a guaranteed weekly salary within the meaning of

12  the salary basis requirement under the FLSA and California law.  Plaintiffs were aware

13  that Fluor had made partial day deductions from compensation paid to PCEs before

14  filing this action, and were also familiar with litigation involving similar claims against

15  Fluor's competitors.  Based on the information available to Plaintiffs' counsel, there

16  appears to have been an industry practice of paying project controls personnel only for

17  the hours they worked, and for overtime hours they worked at a straight time rather

18  than overtime rate.

19       While Plaintiffs contend that the payroll data produced in discovery in this action

20  support the existence of the pattern or practice that they allege, they recognize that a

21  finder of fact could reach a different conclusion.  A trier of fact might determine that

22  the frequency of reductions in pay for partial day absences were not sufficient to

23  constitute a pattern or practice of paying PCEs on an hourly rather than salary basis.

24  Plaintiffs also recognize that a DOL opinion letter and out-of-circuit authority might be

25  interpreted and applied to support Fluor's positions that: (1) the predetermined amount

26  of pay required by FLSA regulations does not have to be set weekly, but rather can be

27

28

set on a pay-period basis; and (2) time-entry and clerical errors that result in an initial payment to an employee of less than $1/26^{th}$ of the employee's annual salary may not call into question the company's intention to pay on a salary basis. Finally, there is also a risk a trier of fact might conclude that Fluor's timekeeping policies and guidance represent a good faith effort to ensure that PCEs are paid on a salary basis, and that the payroll data upon which Plaintiffs rely merely reflects inadvertent deviations from the formal lawful policy. In that case, a trier of fact might: (1) conclude no pattern or practice exists at all; or (2) apply the "window of correction" defense under 29 C.F.R. §541.118(a)(6) or a good faith defense to the assessment of liquidated damages under Section 11 of the Portal to Portal Act[3]; or (3) determine that the existence of these policies preclude a finding that Fluor's violations were "willful," thereby denying the FLSA Class a third year of damages.[4]  Without conceding that any of these results would be correct or appropriate, Plaintiffs recognize the risk of possible adverse outcomes.

Also, while Plaintiffs vigorously contend that the claims in this case are appropriate for class certification, it is certainly possible that Fluor will contest certification in the absence of this Settlement. This Settlement avoids the risk that Plaintiffs would not prevail on their Rule 23 motion or defeat any decertification motion under 29 U.S.C §216(b).

In sum, the novelty of the issues discussed above make the outcome of Plaintiffs' claims uncertain and a lengthy appeal likely. This Settlement avoids that substantial uncertainty, while ensuring that Class Members receive substantial consideration now for a release of their claims.  *See* Rukin Decl., ¶ 10.

---

[3] Section 260 of the FLSA provides a limited defense to an award of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938. . . ."  29 U.S.C. §260.
[4] The FLSA's statute of limitation is two years and can be extended to three years only upon a showing that an employer's violation was willful.  29 U.S.C. §255(a).

b. **The Settlement Consideration and Plan of Allocation
Are Fair and Reasonable**

The Settlement sum is fair and reasonable in light of the risks of further litigation.
The Maximum Settlement Amount constitutes forty percent of the single damages
recoverable by the Class—a significant recovery in light of the risks of litigation.  Rukin
Decl., ¶ 10; Heyman Decl., ¶ 18.  Further, this Settlement affords relief to Class
Members who likely would never have filed individual claims for unpaid overtime
wages, for the simple fact that most of them did not experience a pay period with an
apparently unlawful partial day deduction.  Lefferts Decl., ¶ 4.  It was only through an
analysis of the universe of Class Period payroll data that Plaintiffs uncovered a potential
pattern or practice of unlawful payroll deductions.  Under the circumstances of the case,
the amount of the Settlement is fair, adequate, and reasonable.  *See Dunleavy v. Nadler*,
213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the
potential recovery adequate in light of the plaintiff's risks).

The plan of allocation of the TSP to Class members is also fair and reasonable.
Plaintiffs' counsel explored allocating the TSP based on the hours recorded by Class
Members, but there were significant inconsistencies in how Class Members utilized the
dozens of payroll and timekeeping codes that Fluor maintains, and the amount of
overtime hours worked as defined by the overtime statutes was not apparent from a
review of the code entries.  Further, an allocation based on pay code hours would make
it difficult for Class Members to challenge Fluor's records.  Counsel have no reason to
believe that any one PCE would have worked materially more overtime hours, on
average, than any other PCE.  For these reasons, the Settlement provides that the TSP
shall be allocated based on workweeks worked by Class Members (the standard
allocation methodology in wage and hour cases).

### 3. The Attorneys' Fees and Costs that Plaintiffs Intend to Request Are Reasonable

The Settlement provides that, prior to the Final Approval Hearing, Class Counsel may petition the Court for a total award of fees and costs not to exceed 25% of the total amount paid under the Settlement. Rukin Decl., Exh. 1, ¶ V.C. Plaintiffs submit that this provision is fair and reasonable given the time and expenses that Plaintiffs' counsel have devoted to this case and the result they have achieved for the Class. Class Counsel's fees will be tied directly to the amount that is actually paid out to the Class, and is within the range of reasonableness under Ninth Circuit authority. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (twenty-five percent of the recovery is "benchmark" for attorneys' fees under the percentage of recovery approach.); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (usual common fund recovery is 20-30 percent). The proposed Notice informs Class Members of the maximum amount that may be awarded to Class Counsel for their fees and costs, as well as the Class Members' right to object to Class Counsel's actual application for attorneys' fees and costs within 10 days of the date that application is filed. The proposed Preliminary Approval Order provides that Class Counsel shall file their application for fees and costs on noticed motion set for hearing at the Final Approval Hearing.

### 4. The Proposed Service Awards to Class Representatives and Opt-In Plaintiffs Are Reasonable

The proposed incentive awards are consistent with a fair, just, and adequate settlement. Heyman Decl., ¶¶ 10-17. In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D. Pa. 2000); *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (D. Miss. 2003) (same). To assess

1  whether an incentive payment is appropriate, courts balance "the number of named

2  plaintiffs receiving incentive payments, the proportion of the payments relative to the

3  settlement amount, and the size of each payment." *Staton v. Boeing*, 327 F.3d 938, 977

4  (9th Cir. 2003).

5       The Settlement provides that the two representative Plaintiffs, Mack Ward and

6  William Sidwell, shall each receive a service award of $12,500, and each of the four Opt-

7  In Plaintiffs shall each receive an incentive payment of $1,250. The payments to these

8  six individuals are in recognition of the time and effort that they invested in assisting

9  Plaintiffs' counsel with the investigation, prosecution, and settlement of the case, and

10  accepting the risk of an adverse result. Heyman Decl., ¶¶ 10-17. In addition, the higher

11  payments to Messrs. Ward and Sidwell are in recognition of the additional obligations

12  that they have been required to accept in this Settlement, including the requirement that

13  they (1) execute a general release of all known and unknown claims that they may have

14  against Fluor, and (2) agree never to seek or accept reemployment with Fluor in the

15  future. These are burdens that no Class Member has been required to endure in order

16  to obtain a recovery in this case, and have significant negative economic consequences

17  for the Plaintiffs. Heyman Decl., ¶¶ 10-17.

18       Further, the service award that Plaintiffs seek for the work they have performed

19  in this case are consistent with the range of incentive awards approved by other federal

20  judges in class actions. A 2005 study found that the average incentive award per class

21  member across all categories of class action cases is $15,992, and that employment

22  discrimination class actions (similar to wage and hour class actions because of the threat

23  of retaliation by the employer for active participation in the lawsuit) are "statistically

24  significantly associated with large percentage incentive awards."[5] "Numerous courts in

25  the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more

26

27  [5] Theordore Eisenberg & Georffrey P. Miller, "Incentive Awards to Class Action Plaintiffs: An Empirical Study" (2005). *New York University Law and Economics Working Papers.* Paper 40. http://lsr.nellco.org/nyu_lewp/40

28

where . . . the class representative has demonstrated a strong commitment to the class."
*Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at
*17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases). *See also Bradburn Parent Teacher Store,
Inc. v. 3M*, 513 F. Supp. 2d 322 (E.D. Pa. 2007) (incentive award of $75,000 to one
named plaintiff); *Bynum v. Dist. Of Columbia*, 412 F. Supp. 2d 73 (D. D.C. 2006)
(incentive awards of $200,000 divided among six named plaintiffs); *Van Vrancken v. Atl.
Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (incentive award of $50,000 to one
named plaintiff).

### 5. The Court Should Appoint Rust Consulting, Inc., to Administer Settlement Claims

To ensure the fair and efficient administration of the Settlement, the Court
should appoint Rust, an experienced claims administrator, to distribute the Notice and
administer claims under the Settlement Agreement.  Rukin Decl., ¶ 11.  In return for its
work, Plaintiffs anticipate that Rust will be paid $25,000 from the Settlement Amount to
compensate it for: verifying Class Members' mailing addresses; mailing Notice via First
Class Mail to the approximately 900 Class Members and potentially re-mailing returned
notices to updated addresses; compiling and calculating Class Members' settlement
payments; addressing any Class Members' objections to the pre-printed information on
the Claim Form; communicating with counsel to determine settlement payments;
distributing settlement checks to Class Members; and tax reporting.

### B. Class and Collective Action Certification are proper.

Here, the parties are seeking to settle a California state law wage and hour class
pursuant to Fed. R. Civ. P. 23 as well as a FLSA collective action class pursuant to 29
U.S.C. §216(b).  As discussed below, the standards for establishing a § 216(b) collective
action are less stringent that those for a Rule 23 class.  However, even applying the
more stringent Rule 23 standards, both the California Class and the FLSA Class meet
these standards.  *See Misra v. Decision One Mortg. Co.*, No. SA CV 07-0994 DOC (RCx),

1   2009 WL 4581276, at *4 (C.D. Cal. Apr. 13, 2009) (applying Rule 23 standards to

2   certification of FLSA collective action for settlement purposes); *La Parne v. Monex*

3   *Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606, at *1 (C.D. Cal.

4   Nov. 29, 2010) (same).

5            1.      **Standards Governing Approval of Settlement Classes**

6            In the context of granting preliminary approval of the Settlement, the Court must

7   make a threshold determination as to whether the proposed Class meets the Rule 23

8   requirements. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004);

9   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Namely, the Court must

10  determine whether each proposed class satisfy the requirements that: (1) the individuals

11  in the settlement class is so numerous that joinder would be impracticable; (2) there is a

12  question of law or fact common to the class; the named plaintiffs' claims are typical of

13  the claims of the absent settlement class members; and (4) Plaintiffs and their counsel

14  will adequately and fairly represented the interests of the absent settlement class

15  members. *Hanlon*, 150 F.3d at 1019.  "In addition... the parties seeking class

16  certification must also show that the action is maintainable under Fed. R. Civ. P.

17  23(b)(1), (2), or (3)." *Id.* at 1022.

18           Under the FLSA, a collective action may be maintained by an employee or

19  employees on behalf of others who are similarly situated.  29 U.S.C. §216(b).  In the

20  initial "conditional" certification phase, the "similarly situated" standard is more

21  permissive than Rule 23 and requires only that the named plaintiffs make a "modest

22  factual showing sufficient to demonstrate that [he or she] and potential plaintiffs

23  together were victims of a common policy or plan that violated the law." *Scholtisek v.*

24  *Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  Although this Settlement was

25  negotiated before any motion for conditional certification, it provides that FLSA Class

26  Members who desire to participate in the Settlement may opt-in by submitting an Opt-

27  In and Claim Form, and only those Class Members who affirmatively opt-in to the

28

1  Settlement release their claims.  Under these circumstances, the Court should approve

2  the settlement if it is "present[ed] to the district court [as] a proposed settlement, the

3  court may enter a stipulated judgment after scrutinizing the settlement for fairness."

4  *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).

5      Based on the applicable standards, as further discussed below, the Court should

6  certify[6] the California Class and FLSA Class for settlement purposes.  Fluor does not

7  oppose and has agreed to certification for settlement purposes.

8      **2.      The Settlement Class Satisfies the Requirements of 23(a)**

9      The proposed California Class and FLSA Class each satisfy all the requirements

10  of Rule 23(a).

11      First, the classes are sufficiently numerous to satisfy the requirements of Rule

12  23(a)(1).  The Ninth Circuit has held that a class of 20 persons satisfies numerosity,

13  *Rannis v. Recchia*, No. 09-55859, 2010 WL 2124096, at *5 (9th Cir. May 27, 2010), and

14  courts have generally found the numerosity requirement satisfied when a class includes

15  at least 40 members.  *EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG,

16  2007 WL 1174444, at *21 (E.D. Cal. Apr.19, 2007).  Here, the proposed California

17  Class of approximately 200 PCEs and FLSA Class of approximately 700 PCEs (Lefferts

18  Decl., ¶ 3; Exh. 1, ¶¶ III.A and I) easily satisfies the numerosity requirement.

19      Second, Rule 23(a)(2) is satisfied because there is a question of law or fact

20  common to each class.  "Commonality only requires a single significant question of law

21  or fact," the resolution of which is "apt to drive the resolution of the litigation." *Mazza*

22  *v. Am. Honda Motor Co., Inc.*, --- F.3d ----, No. 09-55376, 2012 WL 89176 (9th Cir. Jan

23  12, 2012), citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Here, such

24  common questions include: whether the identified partial day deductions constitute a

---

26  [6] Although conditional certification and settlement of an FLSA collective action are governed
    by the requirements of 29 U.S.C. §216(b) rather than Fed. R. Civ. P. 23, the FLSA class
27  satisfies both standards and for simplicity's sake Plaintiffs conduct below a single analysis for
    both Classes under the more rigorous Rule 23 standard.

28

1   pattern or practice evidencing an intent not to pay PCEs on a salary basis; whether the

2   salary basis requirement allows employers to make partial day deductions from an

3   employee's weekly pay so long as the employee is guaranteed a biweekly paycheck equal

4   to 1/26[th] of his or her annual salary; and whether Fluor's written policies justify

5   application of the window of corrections defense or any known good faith defense to

6   liquidated damages.

7       Third, the typicality requirement of Rule 23(a)(3) is satisfied because the claims

8   raised by Plaintiffs are typical of the claims asserted on behalf of the class.  Typicality is

9   established if "representative claims are reasonably co-extensive with those of absent

10  class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  The

11  claims of the representative Plaintiffs in this case arise out of the same factual and legal

12  circumstances as the claims of each class member in the respective settlement classes.

13  Like all PCEs, Plaintiffs were classified as exempt, subject to the same timekeeping

14  policies and practices, and the same alleged pattern or practice of deductions.

15      Fourth, Plaintiffs and Plaintiffs' counsel satisfy the adequacy requirement of Rule

16  23(a)(4), as well as the requirements of Rule 23(g).  Rule 23(a)(4) requires that the

17  parties fairly and adequately protect the interests of the class. The adequacy requirement

18  is met where the representatives: (1) will vigorously prosecute the interests of the class

19  through qualified counsel, and (2) have common, and not antagonistic interests, with

20  unnamed members of the class.  *Hanlon*, 150 F.3d at 1020.  Rule 23(g)(1)(C) states that

21  "[i]n appointing lass counsel, the court (i) must consider: [1] the work counsel has done

22  in identifying or investigating potential claims in the action, [2] counsel's experience in

23  handling class actions, other complex litigation, and claims of the type asserted in the

24  action, [3] counsel's knowledge of the applicable law, and [4] the resources counsel will

25  commit to representing the class."

26      Here, Plaintiffs' counsel Rukin Hyland Doria & Tindall LLP and Shapiro Haber

27  & Urmy LLP have actively identified, investigated and prosecuted the claims that are

28

the subject of this Settlement.  Rukin Decl., ¶¶ 6-10; Plaintiffs' counsel have extensive experience in class action litigation, including class overtime claims, and are thus well-qualified to be appointed as Class Counsel.  *See* Rukin Decl., ¶¶ 3-5; Heyman Decl., ¶¶ 3-7.  Lead counsel for both firms has been appointed class counsel in other cases on numerous occasions.  *Id.*  Plaintiffs' counsel have demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation—having already investigated tens of thousands of dollars in costs to investigate the case and analyze the data produced by Fluor—and expect to continue to expend significant resources to oversee and finalize the settlement.  Rukin Decl., ¶ 12.

Finally, the interests of the named Plaintiffs and absent Class Members are not antagonistic.  Plaintiffs have the same claims to unpaid overtime as the members of the Settlement Class, have suffered the same injury, and are entitled to the same remedy.  Beyond the modest enhancements requested, Plaintiffs will receive a portion of the Settlement on the same terms as all other Members of the proposed Class.  Plaintiffs' counsel are aware of no conflicts between the named Plaintiffs and Class Members that would render them inadequate class representatives.

For all these reasons, Plaintiffs' counsel and named class representatives meet the adequacy requirement of Rule 23(a)(4), and both law firms should be appointed as Class Counsel pursuant to  Rule 23(g).

> **3.      The Settlement Class Meets the Requirement of Rule 23(b)(3)**

The Settlement Class meets the requirements of Rule 23(b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy."

First, the Class satisfies the predominance requirement.  "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.  "When common

1    questions present a significant aspect of the case and they can be resolved for all

2    members of the class in a single adjudication, there is a clear justification for handling

3    the dispute on a representative rather than on an individual basis." *Id.*  Here, there is

4    sufficient cohesion to warrant class adjudication.  As discussed in detail above, the

5    salary basis claim in this case by its nature turns on what legal conclusions should be

6    drawn from Fluor's payroll data, and those common issues predominate over any

7    questions peculiar to individual Class Members. *See Scholtisek,* 229 F.R.D. at 393

8    (finding Rule 23(b)(3) satisfied in salary basis case; "Germane to all class members'

9    claims is the factual issue of whether Eldre has a practice of making certain deductions

10   from the pay of salaried employees, and the legal issue of whether that practice is

11   lawful.").

12         Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a

13   class wide basis is "superior to other available methods for the fair and efficient

14   adjudication of the controversy."  The alternative to a single class action—hundreds of

15   individual actions—would be inefficient and unfair.  *Lerwell v. Inflight Motion Pictures, Inc.,*

16   582 F.2d 507, 512 (9th Cir. 1978); *Hanlon,* 150 F.3d at 1023 ("many claims [that] could

17   not be successfully asserted individually... would not only unnecessarily burden the

18   judiciary, but would prove uneconomic for potential plaintiffs.").  Class adjudication is

19   particularly appropriate here given that the core evidence in the case is the payroll data

20   for all Class Members, and it is particularly inefficient to require individual adjudications

21   of modest value claims in the face of such common evidence and legal questions.

22         **C.    The Proposed Notice is Adequate, Such that the Court Should**
          **Order Distribution of the Notice to Class Members**
23

24         Under Rule 23(e), the Court "must direct notice in a reasonable manner to all

25   class members who would be bound by a propos[ed settlement]." FED. R. CIV. P.

26   23(e)(1).  Class Members are entitled to receive "the best notice practicable" under the

27   circumstances. *Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir. 1985).  Notice is satisfactory

28

1  "if it generally describes the terms of the settlement in sufficient detail to alert those

2  with adverse viewpoints to investigate and to come forward and be heard." *Churchill*

3  *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).

4  Moreover, notice that is mailed to each member of a settlement class "who can be

5  identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle &*

6  *Jacquelin*, 417 U.S. 156, 176 (1974).

7         The proposed Notice and notice plan satisfy the requirements of Rule 23(e) and

8  due process.  The Notice clearly explains the nature of the action and the terms of

9  Settlement.  It identifies the Maximum Settlement Amount to be paid by Fluor, the

10  settlement payment that the Class Member will receive if he or she participates in the

11  Settlement, how settlement payments are calculated, and how the Class Member may

12  claim his or her portion of the Settlement.  It further explains how to exclude oneself

13  from the Settlement, how to object to the Settlement, and what impact a Class

14  Member's action or inaction will have on the release of claims.

15         The proposed Notice plan ensures that the parties will make reasonable efforts to

16  mail individual notice to all Class members.  Fluor will provide Rust with each Class

17  member's last known address, phone number, and the last four digits of his or her

18  social security number.  Rust will mail the Notice and Claim Form to the last known

19  address of each Class Member, after first updating the address using the U.S. Postal

20  Service's National Change of Address (NCOA) database as well as Accurint "skip-

21  trace" search software.  In addition, Rust will conduct a skip-trace for all returned

22  Notice packets, send postcards to Class Members who have not submitted claims or

23  excluded themselves from the Settlement 30 days before the end of the Claims Period,

24  and make reminder telephone calls to Class members who have not submitted claims or

25  opted out of the Settlement ten days before the close of the Claims Period.  This is the

26  best notice practicable.  *See Misra*, 2009 WL 4581276 at *9 (use of NCOA database and

27  appropriate skip tracing followed by mailed notice is the 'best notice that is practicable

28

1  under the circumstances.'"").  Because the content of the Notice and the method for

2  distributing it to the Class Members fulfill the requirements of Rule 23 and due process,

3  the Court should approve the proposed notice and the procedures for distributing it.

4       **D.**     **The Court Should Set a Final Approval Hearing**

5       Finally, the Court should set a hearing for final approval of the Settlement on a

6  date appropriately scheduled to follow the date by which Class Members must file

7  objections to the Settlement and Plaintiffs' counsel's request for attorneys' fees.  The

8  parties propose that if the Court grants preliminary approval on January 30, 2012, the

9  final papers in support of the Settlement, including Plaintiffs' counsel's application for

10  attorneys' fees and costs, be filed and served no later than May 10, 2012, and that the

11  hearing on final approval of the Settlement be set on or after June 15, 2012.

12  **V.**     **CONCLUSION**

13       For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant

14  preliminary approval of the proposed settlement; (2) conditionally certify for settlement

15  purposes an FLSA Settlement Class; (3) conditionally certify for settlement purposes a

16  California Class; (4) approve the form, content, and method of distribution of the

17  Notice and Proof of Claim Form; (5) appoint Rust Consulting, Inc., as the Claims

18  Administrator pursuant to the Settlement Agreement; (6) appoint Shapiro Haber &

19  Urmy LLP and Rukin Hyland Doria & Tindall LLP as settlement Class Counsel; and (7)

20  schedule a hearing regarding final approval of the proposed Settlement and Class

21  Counsel's request for attorney's fees and costs.

22

23  Dated: January 18, 2012           Respectfully submitted,

24                           RUKIN HYLAND DORIA & TINDALL LLP

25

26                           By:  /s/ Peter Rukin

                         Peter Rukin

27

28